Hal S. Shaftel (HS-0627)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone 212.969.3000

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PASSLOGIX, INC.,

             Plaintiff,

  against

2FA TECHNOLOGY, LLC, 2FA, INC.,
GREGORY SALYARDS and SHAUN CUTTILL,

             Defendants.

------------------------------------X

Case No. 08 CV 10986 (PKL)

**<u>AMENDED COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

Plaintiff Passlogix, Inc. ("Passlogix"), by its attorneys Proskauer Rose LLP, upon personal knowledge as to matters relating to itself and upon information and belief as to all other matters, alleges the following for its Amended Complaint herein against defendants 2FA Technology, LLC and 2FA, Inc. (collectively, "2FA"), Gregory Salyards ("Salyards") and Shaun Cuttill ("Cuttill"):

### <u>THE PARTIES</u>

1.     Plaintiff Passlogix is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 75 Broad Street, Suite 815, New York, New York 10004. Passlogix is in the business of developing and marketing authentication and identity-management solutions for customers, including supplying technology to validate user identification and enable secure access to computerized systems.

2. Defendant 2FA Technology, LLC ("2FA Tech") is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 930 S. Bell Boulevard, Cedar Park, Texas 78613. Defendant 2FA, Inc., a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 930 S. Bell Boulevard, Cedar Park, Texas 78613, is a closely integrated affiliate of 2FA Tech. Collectively, 2FA purports to have developed certain Credential Management System ("CMS") software for managing user identity on smart cards, and other authentication methods.

3. Defendants Salyards and Cuttill are managing members and/or principals of 2FA, and as registered agents for 2FA, with Salyards located at 1813 Liberty Oaks Boulevard, Cedar Park, Texas 78613 and Cuttill located at 5973 Inwood Drive, Houston, Texas 77057. Both are residents and citizens of the State of Texas. Salyards and Cuttill are solely named as defendants for the purposes of declaratory relief set forth in the First Cause of Action.

## NATURE OF ACTION

4. Passlogix – a leading supplier of computer verification and security-related software with more than 1,000 customers – brings this action against 2FA to safeguard its rights and interests. In a responsible, good faith manner, Passlogix consistently has sought to collaborate with and assist 2FA in the development and marketing of certain technology. At every turn, however, 2FA has taken advantage of Passlogix, in violation of both contractual and extra-contractual duties. For its own strategic reasons, 2FA has purported to terminate agreements and threaten legal action with Passlogix without any legitimate justification. To the detriment of Passlogix, 2FA also has breached obligations to deliver timely, suitable product and

otherwise has unjustifiably exploited Passlogix's resources and unlawfully sought to injure Passlogix's competitive position and reputation.

## JURISDICTION AND VENUE

5. Jurisdiction in this action is based on 28 U.S.C. § 1332 because the matter is between citizens of different States and exceeds the sum of $75,000, exclusive of interests and costs. Jurisdiction is also based on §§ 1331, 1338, 1367 and 2201.

6. Venue is proper in this action under § 28 U.S.C. 1391(a) and/or (b).

7. This Court has personal jurisdiction over defendants because, among other things, each regularly does business in this jurisdiction, and because with respect to 2FA, 2FA has committed acts which caused injury within this jurisdiction.

## BACKGROUND

8. In or about early 2006, 2FA approached Passlogix to collaborate with Passlogix to develop and market certain CMS technology ("2FA CMS"). 2FA was a new venture. Based on 2FA's statements concerning its own capabilities, its associated technology, and potential market opportunities, Passlogix was induced to enter into a certain Licensing Agreement with 2FA, as of April 24, 2006 (the "Original License Agreement"). The Original License Agreement thereafter has been amended on four occasions, consisting of Amendment A, as of March 1, 2007, Amendment B, as of August 8, 2008, Amendment C, as of October 7, 2008, and Amendment D, as of October 24, 2008 (together with the Original License Agreement, individually or collectively referred to as the "License Agreement").

9. Under the Original License Agreement, 2FA assumed, among other things, obligations to exclusively supply and deliver 2FA CMS to Passlogix in accordance with defined

standards and deadlines. The Original License Agreement specifically defines the subject CMS as a:

> web-based system for managing the life-cycle of physical, hard tokens used for two-factor authentication and their associated logical and physical identities, <u>as delivered to Passlogix, and in accordance with the terms of this agreement</u>, including the Statement of Work in Appendix B. (emphasis added)

2FA also, among other things, licensed Passlogix to provide 2FA CMS with other Passlogix product offerings. In return, Passlogix agreed to make certain payments to 2FA, including, among other things, a large initial, upfront payment, and additional royalty and other payments corresponding to the level of sales of the Passlogix product offerings.

10. Subsequent to entering into the Original License Agreement, 2FA failed to comply with various of its obligations to Passlogix. In particular, 2FA failed to deliver suitable quality product that included all agreed minimum functionality as defined in the Original License Agreement, and failed to satisfy deadlines as set forth in the agreement. It also was recognized by the parties that 2FA lacked the resources to meet its obligations under the Original License Agreement. In recognition of these deficiencies, Passlogix agreed to, in good faith, certain revisions of the terms of the parties' relationship and entered into Amendment A, effective March 1, 2007.

11. As a means to assist a struggling 2FA, Amendment A provided for Passlogix to make substantial royalty pre-payments to 2FA on a monthly basis from March 2007 through December 31, 2007. While Passlogix accommodated 2FA by entering into Amendment A, Passlogix put 2FA on notice, by letter dated March 5, 2007, that it rejected certain software deliverables supplied by 2FA, and that 2FA failed to satisfy various other requirements with

respect to such deliverables. Despite Passlogix's good faith request that 2FA take appropriate corrective action, 2FA failed to cure these breaches of its obligations.

12. In the face of its own breaches, 2FA engaged in an effort to fabricate grievances that would entitle it to claim grounds for termination of the License Agreement. By November 2007, 2FA was engaged in dealings with one or more third parties whom 2FA solicited to utilize 2FA's technology, and 2FA was thereby incentivized to end Passlogix's exclusivity rights. By that time, 2FA had received over $450,000 in payments from Passlogix and was continuing to receive the monthly royalty pre-payments. As an excuse, however, to free itself from its obligations under the License Agreement, 2FA claimed that it transmitted, on November 2, 2007, a facsimile notice contending Passlogix was in breach of the License Agreement because it had failed to pay claimed expenses of less than $3,000. Even 2FA's own notice described that amount as "insignificant." But no one at Passlogix in fact received the alleged notice from 2FA. Without any telephonic or other communication to follow up on the alleged outstanding amount, 2FA – acting in bad faith – used the admittedly "insignificant" issue as a pretext for providing a purported termination notice on January 4, 2008, with the goal of leading to the release of 2FA from applicable contractual obligations.

13. The purported January 4, 2008 termination notice sent by 2FA specifically identified the alleged November facsimile (albeit by the wrong date) and the alleged, immaterial expense item as the sole basis for terminating the License Agreement. Passlogix promptly responded to 2FA, via letter, advising that it had never received the claimed November notice and that it would be available to resolve any expense discrepancy as soon as possible. Subsequently, on January 31, 2008, 2FA had no choice in light of the facts but to rescind its January 4, 2008 termination notice.

14.     Although Passlogix was able to develop a large base of over 1,000 customers for its products overall, the 2FA CMS attracted only negligible customer interest. Despite diligent efforts, Passlogix ultimately sold 2FA CMS to three customers. With Passlogix's 2FA CMS sales below contractually defined sales levels, and 2FA's efforts to contravene Passlogix's exclusivity, in March 2008, Passlogix was faced with a choice: pay 2FA to extend the exclusive license, or allow it to lapse and allow 2FA to license its CMS to other parties as was 2FA's goal. With the product's lackluster sales and 2FA's suspect course of dealing, Passlogix ultimately did not exercise its option. As a result, the exclusivity and nature of the Passlogix/2FA relationship changed. Effective August 8, 2008, the parties entered into Amendment B to transition Passlogix to the role of a Reseller, work to transition the three customers (at the customers' sole discretion) to another version of 2FA CMS and for 2FA to pay Passlogix back any excess pre-paid royalties. As a Reseller, Passlogix would sell 2FA CMS essentially as a standalone product. As part of the transition phase, the parties addressed issues concerning customer transition, accounting reconciliations, and disposition of the shared intellectual property and confidential information. Amendment B provided for a 60-day period to resolve these and certain other issues.

15.     When the 60-day period under Amendment B passed with certain issues remaining open, the parties entered into Amendment C, effective October 7, 2008, in order to extend the transition period. While Passlogix complied with obligations relating to customer dealings and deletion of 2FA's claimed intellectual property, the parties still had not agreed on certain accounting reconciliations when the Amendment C period lapsed. The parties therefore, again, extended the transition period by entering into Amendment D, effective October 24, 2008.

16. During November and December 2008, Passlogix sought, in good faith, to address any issues concerning the accounting reconciliations. However, in December, certain third parties complained to Passlogix that 2FA had been contacting them and interfering with Passlogix's business relationships by trying to force them to buy new licenses directly from 2FA. When Passlogix raised this disturbing issue with 2FA, the parties agreed that 2FA would stop contacting certain Passlogix customers, and that the parties would work with a third party accounting firm to resolve any accounting issues.

17. While Passlogix understood the parties were in the process of dealing with any accounting issues, on December 15, 2008, 2FA unexpectedly sent Passlogix a "Notification of Material Breach and Termination" (the "Termination Letter") asserting that Passlogix had materially breached the License Agreement. This was an ambush tactic to surprise Passlogix and gain unjustified leverage in its dealings with Passlogix. There was no mention of resolving the accounting issues in the letter. The Termination Letter contained multiple claims of material breaches, certain of which 2FA stated were "incurable", and demanded that Passlogix pay 2FA $150,878.48, for various obligations allegedly owed, as well as other future payments to be determined.

18. Over the course of the relationship, Passlogix has complied with all obligations owed to 2FA and has performed its responsibilities in all material respects. There is no merit for 2FA's claims of breaches, including any breaches identified in the Termination Letter:

    a. 2FA first alleged that Passlogix violated the Non-Competition section of Amendment B by attempting to sell to its own customer a replacement for the Passlogix/2FA CMS product suite with a functionally distinct product that does not use, compete with or replace CMS technology. Contrary to 2FA's claims, there is no breach of the Non-Competition section

of Amendment B because, among other things, Passlogix never attempted to replace the Passlogix/2FA CMS product suite. Instead, Passlogix offered this customer a functionally distinct product that is outside the scope of the Non-Competition section of Amendment B and had been available prior to 2FA CMS technology.

      b.     2FA next alleged that Passlogix similarly violated the Non-Competition section of Amendment B by attempting to sell to another one of its customers a replacement for the Passlogix/2FA CMS product suite with a functionally distinct product that does not use, compete with or replace CMS technology. Contrary to 2FA's claims, there is no breach of the Non-Competition section of Amendment B because, among other things, Passlogix never attempted to replace the Passlogix/2FA CMS product suite. Instead, at that time this customer purchased 2FA CMS, the customer had also purchased other products from Passlogix that included functionally distinct products outside the scope of the Non-Competition section of Amendment B.

      c.     2FA next alleged, based on unsubstantiated and incorrect speculation, that Passlogix violated the License Agreement by its accounting reconciliations and practices and handling of discounts and pricing schedules. Contrary to 2FA's claims, there is no breach of the License Agreement because, among other things, Passlogix has complied with appropriate accounting, discount and pricing practices and requirements made this 2FA allegation with no knowledge of the financial terms in the referenced transactions.

      d.     2FA next vaguely alleged that Passlogix has infringed and continues to infringe 2FA's intellectual property by developing passive-proximity features for its products that incorporate 2FA's claimed intellectual property. Contrary to 2FA's claims, Passlogix has never infringed, and therefore cannot continue to infringe any intellectual property relating to

2FA. For example, the passive-proximity features referenced by 2FA were in far advanced independent development by Passlogix in 2006 when the Original License Agreement was entered into and merely incorporate compatibility using industry standard means and following the methods Passlogix has applied to other forms of authentication well before its relationship with 2FA.

   e. 2FA next alleged that Passlogix violated section 17.9 of the License Agreement (which never existed), by developing technology that can potentially compete with 2FA's CMS product. Regardless of any misidentification of contractual provisions, and contrary to 2FA's claims, Passlogix is not in development of any product that violates its Non-Competition obligations under Amendment B, nor has Passlogix ever developed CMS functionality.

   f. 2FA next alleged that Passlogix violated Amendment B by allegedly mishandling 2FA's intellectual property during the transition period. Contrary to 2FA's claims, Passlogix deleted all intellectual property claimed by 2FA. 2FA repeatedly stated to Passlogix that 2FA understood Passlogix was to delete its claimed intellectual property, rather than return it, and Passlogix faithfully complied with these obligations.

   g. 2FA next alleged that Passlogix violated Amendment B by not making reasonable good faith efforts to enter into Reseller Agreements with 2FA. Contrary to 2FA's claims, Passlogix in fact has made more than reasonable, good faith efforts to enter into a Reseller Agreement. Indeed, it never refused to confer on any issues and certainly no impasse was reached between the parties. During the allotted time, Passlogix found no demand for products covered by a Reseller Agreement, but nonetheless engaged in negotiations on the issue.

19. Throughout this two-plus year relationship between Passlogix and 2FA, 2FA has routinely acted in violation of contractual and extra-contractual duties. To the detriment of Passlogix, 2FA failed to make timely, suitable deliverables of technology. 2FA induced Passlogix to make payments without Passlogix receiving commensurate value. 2FA has used funds reaped from its Passlogix relationship to develop and market its own technology without benefit to Passlogix. In addition, 2FA repeatedly communicated with Passlogix's business counter-parties with the purpose of injuring Passlogix's competitive position and interfering with Passlogix's business relationships.

## FIRST CAUSE OF ACTION
## [Declaration of Obligations – All Defendants]

20. Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

21. A live case or controversy exists between Passlogix and defendants concerning Passlogix's obligations and whether Passlogix has complied with its obligations.

22. Contrary to 2FA's stated grounds for termination of the License Agreement, Passlogix has fully complied with all its obligations concerning 2FA and there is no valid basis for termination. Although Passlogix never assumed obligations to Salyards or Cuttill individually, each is in a position exercising dominion and control over 2FA's affairs and signed the December 15, 2008 letter purporting to terminate the License Agreement. No act on Passlogix's part was in contravention of any purported right, title or interest that Salyards or Cuttill has in the confidential information or intellectual property that they referenced in the Termination Letter.

23. By reason of the foregoing, the Court should declare (a) that Passlogix has not breached the License Agreement or any actual or purported duties owing to 2FA, Salyards,

Cuttill, or any other managing members, officers, directors, employees or agents of 2FA; (b) that 2FA has no valid grounds to terminate the License Agreement and 2FA is obligated to continue abiding by the License Agreement; (c) that Passlogix has not impermissibly used, handled, infringed or retained any confidential information or intellectual property relating to 2FA, in violation of any contractual provision, copyright or other law; and (d) that Passlogix does not owe any monies to 2FA.

## SECOND CAUSE OF ACTION
### [Breach of Obligations – 2FA Defendants]

24. Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25. 2FA breached its obligations under the License Agreement by failing to deliver its product on a timely basis. To the extent it did deliver product, the deliverables otherwise did not conform to the specifications set forth in the License Agreement.

26. Throughout the course of the parties' relationship, 2FA has breached its duty to act in good faith and fair dealing with Passlogix by, among other things, improperly claiming breaches under the License Agreement without a basis, unjustifiably interfering with Passlogix's competitive position, and unjustly exploiting Passlogix's resources without benefit to Passlogix.

27. 2FA has improperly purported to terminate the License Agreement.

28. 2FA improperly marketed its CMS product ahead of the expiration of Passlogix's exclusivity rights, which further diminished the market opportunities for Passlogix.

29. By reason of the foregoing, 2FA has damaged Passlogix in amounts to be proven at trial, but believed to be not less than $5,000,000, plus interest.

## THIRD CAUSE OF ACTION
### [Tortious Conduct – 2FA Defendants]

30. Paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31. 2FA had knowledge of actual and/or prospective business relationships between Passlogix and third parties. Without any legitimate business justification, 2FA sought to interfere with such relationships, to the detriment of Passlogix.

32. By reason of the foregoing, 2FA has damaged Passlogix in amounts to be proven at trial, but believed to be not less than $5,000,000 plus interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Passlogix prays for judgment against defendants, as follows:

   a. On the First Cause of Action, a declaration (a) that Passlogix has not breached the License Agreement or any actual or purported duties to 2FA, Salyards, Cuttill or any other managing members, officers, directors, employees or agents of 2FA; (b) that 2FA has no valid grounds to terminate the License Agreement; and (c) that Passlogix has not impermissibly used, handled, infringed or retained any confidential information or intellectual property relating to 2FA in violation of any contractual provision, copyright or other statute; and (d) that Passlogix does not owe any monies to 2FA.

   b. On the Second Cause of Action, damages from 2FA in amounts to be proven at trial, but believed to be not less than, $5,000,000, plus interest;

   c. On the Third Cause of Action, damages from 2FA in amounts to be proven at trial, but believed to be not less than $5,000,000 plus interest;

   d. An expedited trial;

   e. Interest, attorneys' fees and the costs and disbursements of this action;

   f. Equitable, preliminary, and permanent injunctive relief; and

g.  Such other, further, and different relief as the Court deems just and proper.

Dated: December 18, 2008
New York, New York

PROSKAUER ROSE LLP

By: *Hal S. Shaftel*
Hal S. Shaftel (HS-0627)
1585 Broadway
New York, New York 10036
Tel. 212.969.3000
Fax 212.969.2900

Attorneys for Plaintiff Passlogix, Inc.